IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARGARET SIEBERS and
VICTOR VARGO, individually and on behalf of a class
of all others similarly situated,

Plaintiffs,

v.

PETER W. BARCA and the
STATE OF WISCONSIN
DEPARTMENT OF REVENUE

Defendants.

OPINION and ORDER

20-cv-1109-jdp

---

In this proposed class action, plaintiffs Margaret Siebers and Victor Vargo challenge provisions of the Wisconsin Unclaimed Property Act under the Takings Clause. The statute authorizes the state to take custody of lost or abandoned property, invest the property, and return the property if the owner claims it. Plaintiffs contend that the state unlawfully retains interest earned on unclaimed property that was non-interest bearing when the state took custody.

When plaintiffs filed this lawsuit, the statute did not entitle them to the interest the state earned on non-interest-bearing property. But less than a year later, Wisconsin revised its law to pay interest on non-interest-bearing property in many situations. But plaintiffs contend that the revised statute does not go far enough. They bring claims against the Wisconsin Department of Revenue and the department's secretary, Peter W. Barca.

Defendants have filed two motions to dismiss plaintiffs' complaint, one before and one after the unclaimed property act was revised. Dkt. 20 and Dkt. 32. Plaintiffs move to amend their complaint in light of the revised statute. Dkt. 35. The core questions in deciding all three

motions are whether plaintiffs' claims are: (1) mooted by the revised statute; (2) ripe for review; barred by Eleventh Amendment sovereign immunity; and (4) proper under 42 U.S.C. § 1983.

The court concludes that none of these grounds warrant outright dismissal, so plaintiffs will be granted leave to amend. But there are limitations on how they may proceed. Plaintiffs may bring official-capacity claims against Barca for prospective relief. They may not seek retrospective damages from Barca or the department. Siebers will be dismissed from the lawsuit because she seeks retrospective relief. The department will also be dismissed. Defendants' first dismissal motion will be granted in part and the second will be denied.

BACKGROUND AND FACTUAL ALLEGATIONS

The court draws the following facts from the amended complaint, Dkt. 18, and the proposed second amended complaint, Dkt 35-1.

In 1970, Wisconsin enacted a version of the Uniform Unclaimed Property Act, a type of law that has been adopted by many states to govern property that has been lost or abandoned. The purpose of unclaimed property laws is to create a system for the safekeeping of lost or abandoned property, to provide owners with a process to reclaim their property, and to allow state governments to benefit from lost or abandoned property that is not reclaimed.

Under Wisconsin's law, property is presumed abandoned after a period of inactivity by the property's owner. Businesses that hold the property, typically financial institutions, must first attempt to contact the owner to return the property. If the business is unable to do so, it must turn the property over to the state along with the owner's name and contact information. Common types of unclaimed property include money in savings and checking accounts,

2

uncashed dividends, stocks and mutual funds, unpaid wages, gift cards, and the contents of safe deposit boxes.

Abandoned property that is transferred to the state remains the property of the original owner; the state serves as the custodian of the property. If the unclaimed property is money, it is deposited into Wisconsin's Common School Fund, which distributes earnings to school districts each year. If the unclaimed property is not money, such as stocks or mutual funds, the state may sell the property after a certain period of time. The sale proceeds are deposited into the common school fund. A portion of unclaimed property and proceeds are also deposited into the state's general fund to pay claims filed by property owners. Owners may reclaim their property at any time by filing a claim with the state.

Plaintiffs filed this lawsuit in December 2020 challenging the state's practice of withholding interest earned by the state on non-interest-bearing property. In November 2021, after this lawsuit was filed, Wisconsin repealed and replaced the statute with a revised version. The court will discuss the relevant changes in the revised statute in the analysis section of this opinion.

The plaintiffs are Wisconsin residents who own non-interest-bearing property that was transferred into to state custody. Plaintiff Siebers filed a claim for her property and received no interest back. Plaintiff Victor Vargo filed a claim but has not yet received a disposition. In their proposed second amended complaint, plaintiffs propose to add a third plaintiff, Carijean Buhk, who is in the same position as Vargo. Vargo and Buhk allege that under the revised statute, they will not receive adequate state-earned interest on their property when the state settles their claims.

ANALYSIS

Plaintiffs contend that Wisconsin's practice of withholding interest on non-interest-bearing property is an uncompensated governmental taking in violation of the United States and Wisconsin constitutions. Their claims sweep broadly, challenging the old and revised statutes, and seeking monetary, injunctive, and declaratory relief.

Plaintiffs bring this action directly under the federal and state takings clauses, U.S. Const. amend. V; Wis. Const. art. I, § 13.7, and under § 1983. Their claims are not novel. Three recent decisions by the Court of Appeals for the Seventh Circuit held that a state's failure to return interest on unclaimed property is a taking without just compensation. These decisions provide the legal background for plaintiffs' claims, although they are not directly dispositive of the issues now before the court.

 In *Cerajeski v. Zoeller*, 735 F.3d 577, 578 (7th Cir. 2013) and *Kolton v. Frerichs*, 869 F.3d 532, 533 (7th Cir. 2017), the court held that Indiana and Illinois provisions that withheld interest on interest-bearing property in state custody were unconstitutional under the federal Takings Clause. In *Goldberg v. Frerichs*, the court extended these rulings to unclaimed property statutes that denied interest to owners of non-interest-bearing property. 912 F.3d 1009, 1012 (7th Cir. 2019). In all three cases, the court relied on the well-settled principle that the owner of an account owns both the principal and interest. *See Brown v. Legal Found. of Washington*, 538 U.S. 216, 235 (2003)). The cases stand for the rule that "a state may not take custody of property and retain income that the property earns." *Kolton*, 869 F.3d at 533; *Goldberg*, 912 F.3d at 1011−12 (when the state earns interest on property in its custody, the property owner is entitled to that interest); *Cerajeski,* 735 F.3d at 578 ("[i]f you own a deposit account that pays interest, you own the interest.").

4

Three motions are before the court. Before the revised statute was enacted, defendants moved to dismiss plaintiffs' complaint for failure to state a claim and lack of subject matter jurisdiction. Defendants contend that plaintiffs' claims are unripe, barred by sovereign immunity, and not permitted under § 1983. Dkt. 21. After the statutory change, defendants filed a supplemental motion to dismiss, asserting that the revised law has mooted plaintiffs' claims. Dkt. 32.

Plaintiffs are undeterred. They move for leave to amend their complaint in four ways: (1) conform the complaint to the revised statute; (2) add allegations related to plaintiff Siebers's claim; (3) add plaintiff Buhk; and (4) delete the claim seeking a declaration of the meaning of state law. Dkt. 35. Defendants oppose amendment, Dkt. 36, contending that amendment would be futile because plaintiffs' new allegations suffer from the same problems as the old allegations. *Id.* Under Federal Rule of Civil Procedure 15(a)(2), the court may grant leave to amend when justice so requires. But the court need not grant leave when amendment would be futile, which means that the new allegations could not withstand a motion to dismiss under Federal Rule of Civil Procedure 12. *See Brunt v. Serv. Emps. Int'l Union,* 284 F.3d 715, 721 (7th Cir. 2002).

It makes sense to address the three motions together. The critical question is whether amendment would be futile because plaintiffs' new allegations raise claims that are moot, unripe, barred by sovereign immunity, or improper under § 1983.

## A. Mootness

Defendants contend that plaintiffs' claims are mooted by the revised statute, so a threshold question is whether the court has jurisdiction to decide this case. Under Article III of the Constitution, federal courts have jurisdiction only over live cases and controversies.

*Wisconsin Right to Life State Pol. Action Comm. v. Barland*, 664 F.3d 139, 146–49 (7th Cir. 2011). A case becomes moot if the dispute between the parties ceases to exist or a party no longer has a personal stake in the outcome of the lawsuit. *Id.* at 149. If a case becomes moot during the litigation, it falls outside the federal court's jurisdiction and the court cannot decide the case.

A dispute over the constitutionality of a statute becomes moot if a new statute is enacted in its place during the litigation and it is "absolutely clear" that the alleged violations could not reasonably be expected to continue. *Zessar v. Keith*, 536 F.3d 788, 794 (7th Cir. 2008). In other words, if the revised statute provides an assurance that the alleged unlawful actions will cease, the lawsuit is moot. *Id.* at 794.

Under the old statute, Wis. Stat. § 177.24(3)(a), only owners of interest-bearing property were entitled to state-earned-interest on their unclaimed property. Specifically, the old statute stated that when an unclaimed property owner filed a claim for the return of his property:

> the administrator shall deliver the property to the claimant or pay the claimant the amount the administrator actually received or the net proceeds of the sale of the property . . . If the property claimed was interest bearing to the owner on the date of surrender by the holder, the administrator shall pay interest at a rate of 6 percent per year or any lesser rate the property earned while in the possession of the holder.

Wis. Stat. § 177.24(3)(a). The statute did not expressly provide for payment of interest on non-interest-bearing property.

The revised statute, Wis. Stat. § 177.0607, established a new framework for paying interest to property owners. It provides that when the state takes custody of non-monetary property, the owner is entitled to any earnings on the property before or on the date the property is sold. Wis. Stat. § 177.0607(1). It states that when the state returns a property

owner's money or sale proceeds from non-monetary property, the state must pay simple interest (at the applicable federal long-term interest rate) for the period that the money or proceeds was in state custody. Wis. Stat. § 177.0607(2). Defendants contend that the revised statute has solved the problem.

But plaintiffs contend that the revised statute "merely nibbles around the edges of this problem and largely perpetuates the wrongs [they] have complained of." Dkt. 34, at 1. Indeed, the revised statute includes several carveouts to the interest-payment requirement:

> (3) Interest shall not accrue:
>
>> (a) On property in the form of money that is less than $100.
>>
>> . . .
>>
>> (c) Before January 2, 2019, except as provided in sub. (4).
>
> (4) Property received by the administrator before January 2, 2019, that was interest-bearing to the holder at the time of receipt by the administrator or this state shall accrue interest while in possession of the administrator or this state at a rate of 6 percent per year or any lesser rate the property earned while in the possession of the holder.

Wis. Stat. § 177.0607(3) and (4).

Plaintiffs assert that state procedures under the revised statute still deprive them of interest on their property in several ways:

- Owners of non-interest-bearing property under $100 are not entitled to interest;

- Owners of non-interest-bearing property over $100 are not entitled to interest earned before January 2, 2019;

- Owners of interest-bearing property transferred to the state before January 2, 2019, will receive reduced interest after January 2, 2019 (from six percent to the

7

federal-long term rate) and the federal-long term rate might not reflect the state's true earnings on the property; and

- Owners of non-interest-bearing property that was returned to them prior to the enactment of the revised statute were denied interest on their property.[1]

Both sides overstate their positions. It is true that the revised statute eliminates the distinction between interest-bearing and non-interest-bearing property for purposes of returning interest. Under the revised law, most owners of non-interest-bearing property are entitled to at least some interest on their property. But the limitations on the provision are not inconsequential, and plaintiffs articulate several ways in which they will continue to be denied interest. The revised statute narrows but does not eliminate plaintiffs' constitutional concerns. So it is not "absolutely clear" that alleged uncompensated takings will cease. *Zessar*, 536 F.3d at 794. And as long as plaintiffs have a concrete interest in the dispute, however small, the case is not moot. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016).

Plaintiffs' proposed amended complaint also maintains claims for retrospective relief based on the old statute. When a challenged statute is repealed or significantly amended, the case is moot only if the plaintiff exclusively seeks prospective relief. *Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir.1995).

Plaintiffs' claims are not futile because of mootness.

---

[1] Plaintiffs do not specify the value of each plaintiff's property or when each plaintiff's property was transferred to the state. But both sides assume that each of these policies apply to the property owned by one or more of the plaintiffs, so the court will make the same assumption.

**B.  Ripeness**

The case-or-controversy limitation on Article III authorizes the federal courts to decide only cases that are ripe for review. The ripeness doctrine concerns whether a case involves abstract, uncertain, or contingent events that may not occur as anticipated, or may not occur at all. *Wisconsin Right to Life*, 664 F.3d at 148. The ripeness of a claim depends on whether the issues are ready for judicial decision and whether the parties would suffer hardship if the court withheld consideration. *Id.* The court does not have subject-matter jurisdiction over unripe claims.

Defendants argue in their motion to dismiss that plaintiffs' claims are unripe because, although plaintiffs filed claims for the return of their property, the claims have not yet been resolved. But plaintiffs' proposed amended complaint states that Siebers has completed the claim process and received no state-earned-interest on her property. Plaintiffs allege that Vargo and Buhk have filed claims that remain unresolved.

While defendants' original motion was pending, the Supreme Court decided *Pakdel v. City & Cty. of San Francisco, California*, 141 S. Ct. 2226 (2021), which clarified the ripeness requirement for takings claims. *Pakdel* states that to satisfy that requirement, a plaintiff does not need to show that he sought relief through prescribed state administrative procedures and that the government rejected his request. *Id*. at 2288. "The finality requirement is relatively modest. All a plaintiff must show is that there is no question about how the regulations at issue apply to the particular [property] in question." *Id.* at 2230 (quotations omitted). The court explained that when the government is committed to a position, ambiguities and contingencies disappear, and the dispute is ripe. *Id.* This requirement ensures that plaintiffs suffer actual harm rather than a hypothetical or contingent injury. *See id*.

9

In this case, there is no question that the state is committed to a position. Siebers received no interest earned on her unclaimed property. And the revised statute provides that Vargo and Buhk are not entitled to interest on property valued at less than $100 or interest earned before January 2, 2019. This result is spelled out in the statute, it is not hypothetical or speculative. Defendants have identified no contingencies or uncertain events that may not occur as anticipated with respect to plaintiffs' claims.

Plaintiffs' claims are not futile on the grounds that they are unripe.

## C.  Sovereign immunity

Defendants contend that sovereign immunity bars plaintiffs' suit. Plaintiffs argue that none of their claims are barred, either because they fall within an exception to sovereign immunity known as the *Ex Parte Young* doctrine or because sovereign immunity does not apply to their claims in the first place.

### 1.  *Ex Parte Young*

The Eleventh Amendment generally prohibits individuals from suing a state, state agency, or state official in federal court. *Indiana Prot. & Advoc. Servs. v. Indiana Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010). But sovereign immunity is not absolute. *Ex Parte Young* created an exception to sovereign immunity for suits against state officials that seek prospective relief. 209 U.S. 123 (1908).

Here, plaintiffs name the department and Barca in his official capacity as defendants. The claims against the department clearly are barred by sovereign immunity because *Ex Parte Young* is not available for claims against state agencies. But plaintiffs may bring official-capacity claims against Barca that meet the *Ex Parte Young* requirements. To determine whether *Ex Parte Young* applies, court consider whether plaintiffs: (1) allege an ongoing violation of federal law;

and (2) seek relief that is properly characterized as prospective. *Indiana Prot. & Advoc. Servs.*, 603 F.3d at 371.

The parties do not dispute whether plaintiffs have alleged an ongoing violation of federal law, so the court will assume that requirement is satisfied. Defendants' central contention is that plaintiffs do not seek relief that is truly prospective. To determine whether sought-after relief is prospective, the court considers whether plaintiffs seek to prevent future conduct or to obtain a remedy for past harms. *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 521 (7th Cir. 2021). Requests for declarations and injunctions connote prospective relief, *see id.*, but the labels are not decisive. *Edelman v. Jordan*, 415 U.S. 651, 666 (1974). What matters is the practical effect of the requested relief. Relief that is labeled as injunctive or declaratory is barred by sovereign immunity if, in practice, judgment for the claimant would result in a money judgment payable out of state funds. *Id.*

But that does not mean that properly prospective relief cannot have a fiscal impact on a state. *Id.* at 667. In some situations, enjoining state officials from unconstitutional practices will change the way that state funds are used. *Id.* When an injunction or declaration would require a state to spend more money, but the increased spending is necessary to comply with federal law in the future, *Ex Parte Young* applies. "Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex [P]arte Young*." *Id.* at 668.

In this case, plaintiffs' amended complaint lists more than a dozen requests for declaratory, injunctive, and monetary relief, which the court paraphrases:

- a declaration that the retention of interest on plaintiffs' unclaimed property is a governmental taking;

- a declaration that the retention of interest on plaintiffs' unclaimed property is a governmental taking for which the state must pay just compensation;

- a declaration that when the state returns unclaimed property and withholds interest earned, that withheld interest is plaintiffs' own property;

- a declaration stating the proper measure of just compensation or the amount of property that the state must return to plaintiffs;

- a declaration that the state must pay just compensation upon the return of unclaimed property;

- a declaration whether plaintiffs are entitled to compensation or return of interest on their unclaimed property under Wisconsin law;

- an injunction preventing the state from refusing to return plaintiffs' own property;

- an injunction requiring the state to stop refusing to compensate plaintiffs for interest earned on their unclaimed property;

- an injunction requiring the state to hold interest on unclaimed property separate from general treasury funds;

- an injunction requiring the state to comply with declarations the court enters;

- an award for the return of plaintiffs' property or just compensation;

Dkt. 35-2, at 17−18.

The precise scope of plaintiffs' requests is difficult to understand. For example, plaintiffs' requests for declaratory relief seem to seek five different versions of the same thing, a declaration that the state's practice of withholding interest on plaintiffs' unclaimed property

is an unlawful uncompensated governmental taking. And it is not clear how plaintiffs intend to use these declarations.

Defendants say that plaintiffs' sought-after relief is a straight-up claim for money damages. They cite *Council 31 of the Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875 (7th Cir. 2012) and *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043 (7th Cir. 2013), for the proposition that "creatively styling" a claim for state funds cannot defeat sovereign immunity.

In *McDonough,* a construction contractor sued Illinois officials for refusing to execute contracts and pay for completed construction work. 722 F.3d 1045–48. The district court issued a temporary restraining order directing the state to execute the contracts, which lead the state to pay for the completed work. *Id*. Sovereign immunity barred the claims because the relief, although framed as injunctive, resulted in a state payment to remedy a past breach of contract. *Id.* at 1052. Similarly, in *Council 31*, a state employees union challenged the constitutionality of an Illinois salary level freeze for state workers. 680 F.3d at 878. Plaintiffs sued after the pay freeze took effect, asking the court to enjoin the rules implementing the new policy. Sovereign immunity also barred this claim. Plaintiffs in that case asked for an injunction that, in essence, would have required the state to pay workers for past-due salary increases. *Id*. at 884.

In this case, plaintiffs seek both prospective and retrospective relief. Plaintiffs concede that some of what they ask for is backward-looking (and they offer several arguments for why the claims are still permissible, which the court will address in the next section). Specifically, they want monetary relief to compensate for interest that the state withheld on property that already has been returned. That is retrospective relief for past harm.

13

But plaintiffs also ask the court for an injunction that prohibits defendants from refusing to pay all earned interest on plaintiffs' unclaimed property moving forward, and an injunction that requires the state to hold interest earned on unclaimed property in a separate account. That is prospective relief.

The court concludes that under *Ex Parte Young*, plaintiffs may seek injunctive and declaratory relief aimed at securing state-earned-interest on claims that have not yet been paid by the state. If plaintiffs succeed on the merits of their claim later in the case, this relief would require the state to settle claims in compliance with federal law in the future. *See Cerajeski,* 735 F.3d at 579 (plaintiff awarded declaration that she was entitled to interest on her unclaimed property to use when she later filed a claim for the return of her property). But the *Ex Parte Young* doctrine does not allow plaintiffs to seek relief aimed at getting interest back on claims already settled by the state. This means that plaintiffs' requests for monetary awards and for declaratory relief that the state is liable for a taking and owes just compensation are not permissible. *Rasche v. Lane*, 150 F. Supp. 3d 934, 944 (N.D. Ill. 2015) (a request for damages to remedy a past injury shoehorned into a claim for declaratory relief is not permitted under *Ex Parte Young*). Applied to the individual plaintiffs, Vargo and Buhk may seek prospective relief because their claims have not been settled, but Siebers has no remedy because her claim has already been resolved.

In sum, plaintiffs' claims are not entirely barred by sovereign immunity. Plaintiffs may proceed on official-capacity claims against Barca in his official capacity under *Ex Parte Young*. They may seek declaratory and injunctive relief requiring the state to include earned interest with claims paid in the future, but they may not seek interest associated with already-settled claims.

### 2.  Damages

Plaintiffs concede that they also want compensation for "unredressed constitutional deprivations." Dkt. 34, at 2. The make two arguments for why sovereign immunity does not bar their damages claims: (1) sovereign immunity is waived in Takings Clause claims; and (2) plaintiffs seek the return of their own property, not money that belongs to the state.

### a.  Waiver

Plaintiffs contend that the Takings Clause stands as an exception to sovereign immunity. Dkt. 24, at 11. As the argument goes, the Takings Clause prohibits the government from taking a person's private property for public use without just compensation. The clause thus creates right to a monetary remedy for a taking that is embedded directly within the constitution. So sovereign immunity does not apply. This concept is known as the "self-executing" character of the Takings Clause. *See, e.g.*, *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2171 (2019).

But the Seventh Circuit expressly rejected this argument in *Garrett v. State of Ill.*, 612 F.2d 1038, 1039 (7th Cir. 1980). The plaintiff brought a takings claim for money damages against state officials, arguing that because "he sued for a deprivation protected directly by the constitution," the Takings Clause should "impose monetary liability on a state without regard for the Eleventh Amendment." *Id.* at 1039–40. The court disagreed, holding that the "Eleventh Amendment stands as an express bar to federal power when a [takings action for damages] is brought against one of the states." *Id.* at 1040.

Plaintiffs cite *Lucien v. Johnson*, which states that *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cty., Cal.*, 482 U.S. 304 (1987) held that "the Constitution requires a

state to waive its sovereign immunity to the extent necessary to allow claims to be filed against it for takings of private property for public use." 61 F.3d 573, 575 (7th Cir. 1995).

But the court concludes that *Garrett* is controlling despite *Lucien*. As an initial matter, *First English* is not as clear on waiver as *Lucien* represents. *First English* suggested in a footnote that the Takings Clause provides a basis for money damages against a government despite sovereign immunity.[2] 482 U.S. at 316, n.9. But plaintiffs in *First English* sued a county rather than a state, and they sued in state court rather than federal court. So the court does not read *First English* to mean that sovereign immunity is waived for takings claims like the one in this case. *See also Ladd v. Marchbanks*, 971 F.3d 574, 580 (6th Cir. 2020) (*First English* "is concerned not with abrogating the states' Eleventh Amendment immunity in federal court, but with noting that the Fifth Amendment's requirement of just compensation forces the states to provide a judicial remedy in their own courts."); Eric Berger, *The Collision of the Takings and State Sovereign Immunity Doctrines*, 63 Wash. & Lee L. Rev. 493, 494 (n. 4) (2006) (the Takings Clause and Eleventh Amendment create a doctrinal collision that *First English* left open; state courts split with federal courts on the issue, the case's discussion of the issue is dicta, and it does not engage with the issue's complexities.).

*Lucien's* reading of *First English* does not overrule *Garrett's* explicit holding. The statement in *Lucien* was not necessary to resolve plaintiff's takings claim, which failed because he sued the wrong defendants, did not show harm, and did not allege that his property was taken for public use. *Id.* at 575–77. The general rule is that one panel of a circuit court cannot

---

[2] The footnote stated in relevant part: "The cases cited . . . we think, refute the argument . . . that the [Takings clause] does not, of its own force, furnish a basis for a court to award money damages against the government." *First English*, 482 U.S. at 316, n.9.

overrule another panel in the in the absence of an intervening statute or Supreme Court decision. James Wm. Moore, *Moore's Federal Practice* § 134.02(1)(c) (3d ed. 2016). In this circuit, when one panel disagrees with a previous panel's decision, the proper procedure is to seek approval from the full court to overrule the earlier decision. 7th Cir. Rule 40(e). In *Lucien*, the court did not seek full court approval to overturn *Garrett*; in fact, the court did not even acknowledge *Garrett*. Thus, *Lucien* could not overrule *Garrett*.

Plaintiffs also cite *Zinn v. State*, which states that the Takings Clause of the Wisconsin Constitution is self-executing and constitutes a waiver to the doctrine of sovereign immunity. 112 Wis. 2d 417, 436, 334 N.W.2d 67, 76 (1983). But *Zinn* did not involve Eleventh Amendment sovereign immunity, it concerned waiver in state court under state law. And a "state's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

The weight of federal precedent allows states to assert sovereign immunity defenses to takings claims for money damages. *See, e.g, Ladd*, 971 F.3d at 579 (a state's sovereign immunity protects it from takings claims for damages in federal court); *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1213 (10th Cir. 2019) (state sovereign immunity bars a takings claim against a state as long as a remedy is available in state court); *Bay Point Properties, Inc. v. Mississippi Transportation Comm'n*, 937 F.3d 454, 457 (5th Cir. 2019), cert. denied 140 S. Ct. 2566 (2020) (Takings claim against the state for monetary award was barred by sovereign immunity).

The court concludes that Wisconsin has not waived its sovereign immunity in this case.

### b.  Return of property

Plaintiffs contend that they may seek damages because state-earned-interest on their property belongs to them, not to the state. Specifically, they contend that the Seventh Circuit decisions in *Cerajeski*, *Kolton*, and *Goldberg* make clear that they own the interest earned on their property. And they assert that they are entitled to their property back under *Taylor v. Westly* and *Suever v. Connell*, Ninth Circuit cases which held that there is an exception to sovereign immunity for takings suits against a state when a plaintiff seeks his own property back and alleges that the property was seized in violation of the constitution. 402 F.3d 924, 925 (9th Cir. 2005); 439 F.3d 1142, 1143 (9th Cir. 2006).

But plaintiffs have not directed the court to any binding authority that recognizes this exception to sovereign immunity and the court's research did not reveal any. The rule in this circuit is that sovereign immunity bars any request for relief that would result in monetary compensation from the state for a past constitutional wrong. *Driftless*, 16 F.4th at 521; *MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 292 (7th Cir. 1993). The caselaw make no distinction between money in state coffers that is owned by the state versus money owned by the property owner, and the line would be a difficult one to draw. *See, e.g., Rubinas v. Maduros*, 513 F. Supp. 3d 994, 1005 (N.D. Ill. 2021) (rejecting *Suever*'s application to taxpayer's claim for the return of assets seized by the state from her bank account to cover tax liability because the funds were not escheated or held in trust).

The court concludes that plaintiffs' request for the return of their own property is "indistinguishable from an award of damages against the state" and is barred by sovereign immunity. *Edelman,* 415 U.S. at 651. So plaintiffs may not pursue damages under this theory.

**D. Section 1983**

Plaintiffs also assert Takings Clause claims under § 1983, which authorizes private individuals to sue "persons" acting under color of state law for constitutional deprivations. Defendants contend that plaintiffs' § 1983 claims should be dismissed because neither the department nor Barca can be sued under the statute. Defendants are correct in some respects. States and state agencies are not persons for § 1983 purposes and cannot be sued. *Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018). Section 1983 does not allow damages suits against state officials in their official capacity either, because that is the same as suing the state. *Id.* So plaintiffs may not seek monetary damages against the state or Barca under § 1983.

But official-capacity suits against state officials seeking prospective relief are not considered actions against the state and are permitted by § 1983. *Williams v. Wisconsin*, 336 F.3d 576, 581 (7th Cir. 2003) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989)). Because plaintiffs seek declarations and injunctions aimed at preventing ongoing constitutional violations, they may sue Barca for prospective relief under § 1983.

Defendants contend that to bring this type of claim, plaintiffs must allege that Barca was personally involved in the violation. But the § 1983 personal-involvement requirement only applies to actions for damages. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (defendant's lack of personal involvement would be conclusive if plaintiff sought only damages, but because plaintiff sought prospective relief, defendant's participation in the alleged violations is irrelevant). A defendant may be enjoined even if he was not personally involved in the violation if he would be responsible for implementing the prospective relief. *Id.* Barca is the department's secretary and would have this responsibility.

The court will dismiss plaintiffs' § 1983 claims for damages and allow them to proceed on § 1983 claims for prospective relief against Barca. It is not clear what this claim adds to plaintiffs' lawsuit, because the relief available under § 1983 and *Ex Parte Young* is the same.

CONCLUSION

Wisconsin's revised unclaimed property act does not moot plaintiffs' claims, which are not unripe, or barred by sovereign immunity or § 1983 principles. Amendment would not be futile, so plaintiffs' will be granted leave to amend. Defendants' initial motion to dismiss will be granted in part and their supplemental motion to dismiss will be denied, consistent with this opinion. Plaintiffs may bring federal and state takings claims seeking prospective relief but they may not seek money damages. The department will be dismissed from this lawsuit. Siebers has no avenue for relief and also will be dismissed. When plaintiffs move for class certification, they will need to appoint a class representative whose claims share the same essential characteristics as the class members' claims. *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009).

ORDER

IT IS ORDERED that:

1. Defendant's motion to dismiss, Dkt. 20, is GRANTED in PART.

2. Defendants' supplemental motion to dismiss, Dkt. 32, is DENIED.

3. Plaintiffs' motion for leave to amend, Dkt. 35, is GRANTED. Plaintiffs should file the new operative complaint as a separate docket entry.

4. Plaintiff Margaret Siebers is DISMISSED.

5. Defendant Department of Revenue is DISMISSED.

Entered July 5, 2022.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge