IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VICTOR VARGO, and CARIJEAN BUHK,
individually and on behalf of a class of all others
similarly situated,

<table>
<tr><td align="center">Plaintiffs,</td><td align="center">OPINION and ORDER</td></tr>
<tr><td>v.</td><td align="center">20-cv-1109-jdp</td></tr>
</table>

PETER W. BARCA, Wisconsin Secretary
of Revenue,

Defendant.

---

Plaintiffs Victor Vargo and Carijean Buhk bring this class action for declaratory and injunctive relief, challenging the constitutionality of certain provisions of Wisconsin's Revised Uniform Unclaimed Property Act, 2021 Wis. Act 87. Before the court is Buhk's motion under Rule 23 of the Federal Rules of Civil Procedure to certify a class under Rule 23(b)(2), designate her as class representative, and appoint Dennis Grzezinski, Charles Watkins, Garrett Blanchfield, and Roberta Yard as class counsel for plaintiffs. Dkt. 48.

The court will grant the motion, but only with respect to a class comprised of people who, like Buhk, have unclaimed, non-interest-bearing property in state custody that is $100 or more. The claims of these class members satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy, and the court is persuaded that their claims can be resolved collectively. But class members whose property is less than $100 must be excluded from the class because their claims arise from a separate statutory provision that doesn't apply to Buhk or the other class members.

BACKGROUND

The court reviewed the factual and legal backdrop for plaintiffs' claims in a previous order. Dkt. 41. To recap briefly, since 1970, Wisconsin has had an unclaimed property law that regulates what businesses are to do with unclaimed or abandoned financial assets, such as savings accounts, checking accounts, stocks and mutual funds, securities, and mature life insurance policies. In general, after one to five years of inactivity by the property owner, Wisconsin businesses must turn over all unclaimed property to the Department of Revenue. The Department takes custody of the property indefinitely, invests it, and returns it to the owner if the owner claims it and can prove ownership or legal rights to the funds. If the property delivered to the Department is not in the form of money, such as tangible contents of safe deposit boxes or securities, the Department may first convert it to money by selling it.

Wisconsin's unclaimed property law is not an escheat statute; it is purely custodial in nature. While the state retains custody of the property, title to the property remains with the owner. But in its capacity as custodian, the state invests unclaimed property funds in either the "school fund" or the "general fund." Wis. Stat. § 177.0801(1), (2). Amounts held in both of these funds are managed through the State Investment Fund (SIF), which is overseen by the State of Wisconsin Investment Board (SWIB). According to plaintiffs, their unclaimed property, as well as the interest earned by the property while in the state's custody, is used to fund state programs or operations. Dkt. 46, ¶ 25.

The Department of Revenue maintains an online searchable database by which owners can attempt to locate unclaimed property.[1] The owner may reclaim his or her property from

---

[1] *See* https://www.revenue.wi.gov/Pages/UnclaimedProperty/Home.aspx.

the state at any time by filing a claim for the property with the Department. Wis. Stat. § 177.0903(1). The Department has 90 days in which to allow or deny the claim. Wis. Stat. § 177.0904(2). If the Department allows the claim, then it "shall pay or deliver the property to the owner or pay to the owner the net proceeds of a sale of the property, together with interest, income or gain to which the owner is entitled under s. 177.0607." The statute's scheme for paying "interest, income or gain" is the target of this suit.

At the time plaintiffs filed this action, Wisconsin's unclaimed property law did not require the Department to pay any interest to a property holder who successfully reclaimed property that had been non-interest bearing when the Department took custody.[2] Plaintiffs alleged that the state's retention of interest was an unlawful taking under three recent decisions by the Court of Appeals for the Seventh Circuit: *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017), and *Goldberg v. Frerichs*, 912 F.3d 1009 (7th Cir. 2019). In *Cerajeski* and *Kolton*, the court held that Indiana and Illinois statutory provisions that withheld interest on interest-bearing property in state custody were unconstitutional under the federal Takings Clause. In *Goldberg*, the court extended these rulings to unclaimed property statutes that denied interest to owners of non-interest-bearing property. In all three cases, the court relied on the well-settled principle that the owner of an account owns both the principal and interest. *See Brown v. Legal Found. of Washington*, 538 U.S. 216, 235 (2003). The cases stand for the rule that "a state may not take custody of property and retain income that the property earns." *Kolton*, 869 F.3d at 533; *see also Goldberg*, 912 F.3d at

---

[2] Future references to "non-interest-bearing property" in this opinion is shorthand for property that was not interest bearing to the holder at the time of receipt by the Department or the state. Likewise, "interest-bearing property" is shorthand for property that was interest bearing to the holder at the time of receipt by the Department or the state.

1011-12 (when the state earns interest on property in its custody, the property owner is entitled to that interest); *Cerajeski,* 735 F.3d at 578 ("[i]f you own a deposit account that pays interest, you own the interest.").

Wisconsin revised the law in 2021 Wis. Act. 87. Under the revised law, called the "Revised Uniform Unclaimed Property Act" ( or "UPA"), the Department of Revenue generally pays simple interest for the period that the money or proceeds was in state custody. This rate is determined by applying "the annual federal long-term rate determined under section 1274(d) of the Internal Revenue Code in effect on December 31 of the year prior to the year in which the claim is paid." Wis. Stat. § 177.0607(2).

Plaintiffs Victor Vargo and Carijean Buhk allege in the third amended complaint[3] that they are owners of non-interest-bearing unclaimed property that is in custody of the Department of Revenue, whose current secretary is defendant Peter Barca. Buhk, the sole proposed class representative, alleges that the monetary value of her property is between $100 and $1,000. It was delivered to the Department in 2006. Dkt. 50, ¶ 6. Vargo hasn't specified a dollar amount or how long his property has been in defendant's custody.[4]

Plaintiffs allege that even as amended, the UPA violates the Takings Clause by denying them the state-earned interest on their property in three ways:

---

[3] The original complaint was filed by Vargo and Margaret Seibers. Dkt. 1. This court granted plaintiffs leave to amend their complaint and dismissed Seibers on July 5, 2022. Dkt. 41, at 20-21. With the court's permission, plaintiffs filed a third amended complaint on August 5, 2022, adding Buhk as a plaintiff. Dkt. 46.

[4] Vargo hasn't joined the motion for class certification or asked to be named as a class representative. Accordingly, the court doesn't consider his adequacy to represent the class.

(1) Owners of unclaimed non-interest-bearing property in amounts under $100 are not entitled to any interest, Wis. Stat. § 177.0607(3)(a);

(2) Owners of unclaimed non-interest-bearing property in amounts over $100 are entitled to interest for periods after January 2, 2019[5], but not for periods before that date, with interest calculated at the annual federal long-term rate, which plaintiffs claim is below the rate of actual earnings by the state, Wis. Stat. § 177.0607(2) and (3)(c); and

(3) Owners of unclaimed interest-bearing property transferred to the state before January 2, 2019, will receive the lesser of 6% interest or the rate actually earned on the property for the period before January 2, 2019, and will accrue interest at the federal long-term rate after that date. Wis. Stat. § 177.0607(4).

Dkt. 41, at 7-8.

Plaintiffs bring their facial challenge to the statute's interest-payment provisions on their own behalf and as a class action seeking declaratory and injunctive relief. They request that the court: (1) declare that the state is required to pay "at least the earnings on their property while in State custody"; and (2) issue an injunction requiring the state to make such payments in the future. Dkt. 61, at 3.

Buhk seeks to certify and represent the following class:

All persons or entities (including their heirs, assignees, legal representatives, guardians, administrators, and successors in interest) whose non-interest bearing property is being held in the custody of the Defendant under the Wisconsin [Unclaimed Property Act], except for (1) other states and governmental units or subdivisions of states (2) persons whose only property so held by the Defendant was interest bearing to the owner on the date of surrender by the holder and who were paid interest equal to or greater than Defendant's earnings or interest.

Dkt. 48.

---

[5] This is the date of the mandate in *Goldberg*, 912 F.3d 1009.

ANALYSIS

## A. Legal standard

The requirements for class certification under Rule 23 are well established: (1) the scope of the class as to both its members and the asserted claims must be "defined clearly" using "objective criteria," *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 657 (7th Cir. 2015); (2) the class must be sufficiently numerous, include common questions of law or fact, and be adequately represented by plaintiffs (and counsel) who have claims typical of the class, Fed. R. Civ. P. 23(a); and (3) the class must meet the requirements of at least one of the types of class actions listed in Rule 23(b). In this case, Buhk asks for certification under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The question at this stage is not whether Buhk is likely to prevail, but rather whether "plaintiffs' claims and the proposed class members' claims rise and fall together." *King v. Landreman*, 19-cv-338-jdp, 2020 WL 6146542, *3 (W.D. Wis. Oct. 20, 2020); *see also Schleicher v. Wendt*, 618 F.3d 679, 686 (7th Cir. 2010) ("Rule 23 allows certification of classes that are fated to lose as well as classes that are sure to win.").

## B. Defendant's arguments

Defendant contends that Buhk cannot satisfy any of the requirements of Rule 23(a) or Rule 23(b)(2). He argues that Buhk's substantive claim is not viable and that she cannot show that the class members suffered a common injury or that her claim is typical of the claims of the putative class members, making her unable to fairly and adequately represent the proposed class.

The crux of defendant's argument is that neither Buhk nor any other class member has standing because whether they will "suffer a taking" cannot be known until they file a claim for the return of their property. Defendant points out that under the UPA, the interest rate that ultimately gets credited to the property isn't determined until the property is reclaimed, if it's ever reclaimed at all. Depending on when the property is reclaimed and how long it was in the state's custody, a class member could end up receiving *more* in interest than what the state actually earned on the property. In addition, depending on the *type* of property at issue, there may be administrative costs that get deducted from any amounts returned to the claimant. Defendant argues that given all these varied, contingent circumstances, determining whether the class members have suffered a taking only can be done on an individual, property-by-property basis.

Although not framed as such, defendant's argument is a renewed attempt to show that plaintiffs' claims are not ripe. *See Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992) (case is not ripe if the "parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts."). The court rejected that argument in denying in part defendant's earlier motion to dismiss, Dkt. 41, at 9-10, and defendant hasn't advanced any new facts or arguments to support its conclusion that Buhk's claim is premature. Nevertheless, because defendant's arguments implicate this court's jurisdiction, and because it is the cornerstone of their opposition to class certification, the court will revisit it. *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022) (law of the case doctrine's force is "lowest when applied to jurisdictional questions").

## C.  Ripeness

To state a Takings Clause claim, a plaintiff must allege that (1) the government "took" property, either through a physical taking or unduly onerous regulations, (2) the taking was for public use, and (3) the government did not pay just compensation. *Conyers v. City of Chicago*, 10 F.4th 704, 710–11 (7th Cir. 2021). Defendant's ripeness argument rests on the premise that a takings claim does not accrue under the UPA until a plaintiff has been denied "just compensation," that is, until a plaintiff reclaims her property and receives an interest pay-out that is less than the amount the state earned in interest on that property. This premise is faulty.

In *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019), the Supreme Court held that a plaintiff has "an actionable Fifth Amendment takings claim when the government takes his property without paying for it," regardless of the availability of post-taking remedies. The Court rejected the argument that defendant makes here, namely, that a takings claim does not accrue until the property owner has been denied just compensation. *Id*. at 2173 ("Certainly it is correct that a fully compensated plaintiff has no further claim, but that is because the taking has been *remedied* by compensation, not because there was *no taking* in the first place.") (emphasis in original); *see also Cerajeski*, 735 F.3d at 580 ("Even if by some magic the cost to the state of its custodianship of Cerajeski's bank account and related services equaled the confiscated interest, the confiscation would be a taking within the meaning of the takings clause."). Defendant's ripeness argument conflates the question of whether a taking occurred with the separate question of the remedy due for that taking. As *Knick* makes clear, a plaintiff may sue in federal court under § 1983 at the time her property is "taken;" whether she might later be compensated for the taking doesn't matter to the ripeness issue.

It is true that in *Pakdel v. City of San Francisco*, 141 S. Ct. 2226 (2021) (per curiam), a case cited in this court's previous order, the Supreme Court held that a federal court should not consider a takings claim before the government has reached a "final" decision, that is, until "there [is] no question . . . about how the 'regulations at issue apply to the particular [property] in question.'" *Id*. at 2228-30 (citations omitted). But a closer look at *Pakdel* indicates that it is of doubtful application to this case.

*Pakdel* involved a regulatory taking, *i.e.*, "a restriction on the use of property that went 'too far.'" *Horne v. Department of Agriculture*, 576 U.S. 350, 360 (2015) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)). In those kinds of cases, the threshold question of whether the government has appropriated private property for a public use cannot be decided without conducting an "'ad hoc' factual inquiry" to understand how the regulations apply to the particular property at issue. *Id*. But in this case, the court understands plaintiffs to be claiming that the state has *directly* appropriated their property. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321 (2002) (explaining distinction between physical takings and regulatory takings). Specifically, plaintiffs allege that the state has taken the interest earned by their property while in the state's custody and used it to fund state programs or operations. This type of *per se* taking triggers a "categorical duty to compensate the former owner" under the Takings Clause without a need to examine the regulation's effect on the owner's use of his property. *Brown*, 538 U.S. at 233. In fact, in *Brown*, the Court assumed that a law like the one at issue in this case could constitute such a *per se* taking. *Id*. at 235, 240.

The third amended complaint fairly alleges a *per se* taking: that the state has taken interest earned on plaintiffs' unclaimed property and used it for a public purpose without

paying for it. Plaintiffs will have to prove this at trial. But assuming they meet their burden, and even if the Department ultimately might pay interest to Buhk or any other class member in an amount that equals the confiscated interest, "the confiscation would be a taking within the meaning of the takings clause." *Cerajeski,* 735 F.3d at 580. So plaintiffs' takings claims are ripe.

**D. Class claims**

Plaintiffs allege that Wisconsin's revised UPA violates the takings clause in three different ways: (1) it denies interest to people whose property was non-interest-bearing and is less than $100; (2) it denies interest to owners of unclaimed non-interest-bearing property in amounts over $100 before January 2, 2019, with interest after that date calculated at the annual federal long-term rate; and (3) owners of unclaimed interest-bearing property transferred to the state before January 2, 2019, will receive the lesser of 6% interest or the rate actually earned on the property for the period before January 2, 2019, and will accrue interest at the federal long-term rate after that date. But Buhk is asking the court to certify a class comprised only of individuals whose property was *non*-interest-bearing at the time it was transferred to defendant. This makes sense: Buhk has alleged that her property was non-interest-bearing, so she wouldn't have standing, much less be an adequate class representative, to challenge a statutory provision that doesn't apply to her.[6] *Johnson v. U.S. Office of Personnel Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015) (standing is not dispensed "in gross"; rather, a plaintiff must have suffered actual or threatened injury "that is traceable to the wrongdoing alleged in *that* particular claim.") (emphasis in original); *E. Texas Motor Freight Sys., Inc., v.*

---

[6] The same goes for Vargo, but as noted, he does not seek to represent the class.

*Rodriguez*, 431 U.S. 395, 403 (1977) (class representative must possess the same interest and suffer the same injury as class members). Accordingly, the court concludes that plaintiffs are no longer pursuing their third claim related to interest-bearing property.

## E.  Class definition

The class definition is deficient in four respects. First, given that the proposed class is already explicitly limited to owners of "non-interest bearing property," it is unnecessary to exclude from the class persons "whose only property so held by the Defendant was interest bearing to the owner on the date of surrender by the holder and who were paid interest equal to or greater than Defendant's earnings or interest." The court will strike this unnecessary language from the definition.

Second, although the putative class is defined as owners of unclaimed non-interest bearing property that is being "held in the custody of the Defendant under the Wisconsin [Unclaimed Property Act]," defendant asserts that neither he nor the Department of Revenue holds most unclaimed property. According to defendant, the "State of Wisconsin" holds the majority of funds received under the UPA in its school fund, and in turn, the SIF. The Department of Revenue holds only what the agency estimates will be necessary to pay the upcoming year's claims. *See* Wis. Stat. § 177.0801(2). The court assumes that Buhk seeks to proceed on behalf of non-interest-bearing property owners whose funds are being held by the state in in *either* the state's school fund, the SIF, *or* defendant's "claim coverage" fund. So the court will operate under this assumption in ruling on the motion for class certification.

Third, although not raised specifically as an objection to the class definition, defendant argues that some class members will never be harmed by the state's alleged failure to pay proper interest because their property will never be claimed, either because they never seek it, they

11

cannot prove it's theirs, or they die intestate. *Cf. Cerajeski*, 735 F.3d at 581 ("Of *course* the state can take abandoned property without compensation—there is no owner to compensate."). When a class is defined so broadly "as to include a great number of members who for some reason *could not* have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012). But the solution to an overbroad class is to "refine the class definition rather than by flatly denying class certification on that basis." *Id*. at 825. So defendant's concern about class members who don't come forward or can't prove ownership can be addressed by limiting the class to people who submit claims for their property that are approved by defendant. Moreover, the fact that these members may not presently be ascertainable is not fatal given that "Rule 23(b)(2) does not require notice, because no one can opt out of a (b)(2) class." *Lewis v. City of Chicago, Illinois*, 702 F.3d 958, 962 (7th Cir. 2012).

Fourth, the proposed class is composed of two different sets of class members: (1) those who cannot receive any interest because their property is less than $100; and (2) those who can receive at least some interest because their property is $100 or more. As discussed further below, the court cannot resolve the claims of both types of class members together, nor is Buhk an adequate representative of both classes. If the owners with property less than $100 are included in the class, then the court cannot certify it. Rather than deny the motion for class certification on that basis, the court will exclude those members from the proposed class.

The court will modify the class definition to address all of the above concerns. The modified language is set forth below in the order section of this opinion.

### F.  Rule 23(a) requirements

#### 1.  Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no specific numerical requirement, but "a forty–member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). The state has admitted that "thousands" of people own non-interest-bearing property that is in the custody of defendant. So even excluding those class members whose property is less than $100, it appears that the class would still be sufficiently numerous that joinder of all of those individuals would be impractical.

Defendant argues that Buhk cannot meet the numerosity requirement because she hasn't presented any evidence showing how many of the thousands of owners of non-interest-bearing unclaimed property "actually have a viable takings claim," even under plaintiffs' theory of the case. Dkt. 56, at 26. But this is a rehash of defendant's claim that the plaintiffs' takings claims are not ripe, which the court has already rejected. So the court finds the numerosity requirement is satisfied.

#### 2.  Commonality, typicality, and adequacy of class representative

There is significant overlap in the requirements for commonality and typicality under Rule 23(a). *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). Both requirements focus on the question whether the court or the factfinder can resolve issues across the class rather than through individualized determinations. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'") (citing *Falcon*, 457 U.S. at 157); *Muro v. Target*

13

*Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (typicality is satisfied if class representative's claims have "same essential characteristics" as class members' claims). In many cases, including this one, the requirement of typicality merges with the further requirement that the class representative "will fairly and adequately protect the interests of the class." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(4)). Similar to the typicality inquiry, the adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. *See Falcon*, 457 U.S. at 157-158, n. 13.

Buhk argues that commonality, typicality, and adequacy are present because all of the class members' claims are based on the common contention that Wisconsin's UPA, as revised, does not "conform[] to the Seventh Circuit's holdings concerning how owners of unclaimed property should be compensated for the State's use of their property." Dkt. 61, at 1. Buhk contends that under the Seventh Circuit's interpretation of the Takings Clause as expressed in *Cerajeski*, *Kolton*, and *Goldberg*, the state must pay at least the interest that the state actually earned on the property while it was in the state's custody. She says the revised UPA does not do this: instead, it calculates interest based on the annual federal long-term interest rate (which may or may not be higher than the state's actual earnings), and it pays no interest at all for amounts less than $100 or for the time period before January 2, 2019. According to Buhk, she and all of the class members have suffered the same injury: the state has taken their property (the earnings on their unclaimed property) for a public use that it plainly intends "not to fully compensate [them] for." Dkt. 61, at 7.

Defendant argues that commonality and typicality are lacking because the class includes members, including Buhk, who haven't yet filed a claim or may not be able to prove pecuniary

14

injury. The court rejects this argument. Not only is it contrary to *Knick*, as discussed above, but it reflects a misunderstanding of the relief plaintiffs are seeking. Plaintiffs aren't challenging any particular claim settlement, seeking money damages, or asking the court to order the defendant to make any specific calculations regarding interest amounts due any particular class member. In fact, this court has already held that claims for monetary damages would be barred by sovereign immunity. Dkt. 41, at 14. Rather, plaintiffs are challenging the validity of the *method* the UPA uses to determine what pecuniary compensation is owed to class members, and ask the court to declare that a different method should be used.

The method the state uses is not in dispute; it is spelled out in the statute. When a defendant engages in standardized conduct towards members of the class, commonality is generally satisfied. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). That the method's application might lead to different results in individual cases doesn't preclude certification of a class for common equitable relief, as plaintiffs seek here. *Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 442 (7th Cir. 2015); *King*, 2020 WL 6146542, *5. Further, class certification does not depend on proof that every member of the putative class has been harmed. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757–58 (7th Cir. 2014). "[A] class will often include persons who have not been injured by the defendant's conduct . . . Such a possibility or indeed inevitability does not preclude class certification." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009).

Still, commonality isn't satisfied unless *all* the class members share a common injury. Buhk's proposed class includes members who are injured by different statutory provisions. Specifically, owners of unclaimed property in amounts less than $100 are subject to a different statutory provision than applies to owners of $100 or more. *See* Wis. Stat. § 177.0607(3)(a).

The class members in the former group will receive no interest at all, whereas Buhk and other owners of property valued at $100 or more will receive at least some interest. And owners in the <$100 group are subject to a unique defense: according to the state, property under $100 does not earn enough interest to offset the state's administrative costs, so the state need not pay interest to these class members. *See Brown*, 538 U.S. at 233 (if principal is so small that administrative expenses exceed the return on investment, no compensation is due); *Goldberg*, 912 F.3d at 1011 ("Amounts as slight as $100 probably cannot earn net interest."). The factual and legal differences in the claims of these two groups preclude certification of a single class of non-interest-bearing property owners.

Buhk admits that her proposed class includes members who will be "victimized" by different parts of the UPA. She says their claims are nevertheless common because "no one [in the class] is paid what they should be paid" and "everyone" in the class would benefit from an injunction. Dkt. 49, at 12. But these kinds of "superficial common questions," defined at a high level of generality, are not enough to show commonality. *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012) (quoting *Wal-Mart*, 131 S.Ct. at 2551). Injuries to class members that result from different statutory provisions that work in different ways do not present questions of law or fact that can be resolved with respect to all of the class members with "one stroke." *Wal-Mart*, 564 U.S. at 350.

Further, even if the claims of these two groups share some overlapping issues of law or fact, Buhk cannot adequately represent a class whose injuries she does not share. Named plaintiffs who represent a class "must allege and show that they personally have been injured." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). They cannot "piggy-back" on the injuries of the unnamed class members. *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002). As the

Supreme Court has explained, "[w]e have repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (citing *Rodriguez*, 431 U.S. at 403) (internal quotation marks omitted); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (plaintiff who has been subject to injurious conduct of one kind does not possess "by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class."). So Buhk can't serve as an adequate representative of the <$100 class members who are subject to a separate provision because she doesn't have standing to challenge that provision.[7] *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citations and quotations omitted) ("Standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."). And although certification of a Rule 23(b)(2) subclass of <$100 owners might otherwise be appropriate, *see* Rule 23(c)(5), the court cannot do so absent an adequate class representative.[8]

---

[7] The court did not conclude otherwise in its previous order. In ruling that plaintiffs' claims as outlined above were not moot, the court assumed that each of the statutory provisions at issue "apply to the property owned by one or more of the plaintiffs." Dkt. 41, at 8, n.1. The precise issue of whether the individual plaintiffs had standing to press each type of claim was not presented to the court. So the law of the case doctrine doesn't apply. *Flynn*, 39 F.4th at 954 ("[L]aw of the case does not apply at all where the precise issue presented differs from the one decided earlier.").

[8] Vargo, the other named plaintiff, hasn't alleged the amount of his property. Once again, however, plaintiffs haven't proposed him as a class representative.

Defendant argues that Buhk is not an adequate representative for even the ≥ $100 class members because she controls when she will request return of her property, and might be tempted to act in her own self-interest by reclaiming her property when the federal interest rate is high. This is a fair objection, but the court ultimately finds it unpersuasive. Buhk has averred that she understands her obligations as class representative and that she must make decisions based on the interests of the class. Dkt. 50, ¶ 7. Her incentive to reclaim her property when federal rates are high is no different than that of any other class member. Further, the fact that Buhk stands to recover 13 years of state earnings on her property that would otherwise not accrue if she was to cash out now is a strong counter-incentive for her to see the case through to its conclusion. The court is satisfied that Buhk can adequately represent the interests of the class, provided it is limited to owners of unclaimed non-interest-bearing property valuing $100 or more.

## G. Adequacy of class counsel

Rule 23(g)(1)(A) sets forth four factors that a court must consider before appointing class counsel: the quality of counsel's work in the case; counsel's experience in handling similar cases; counsel's knowledge of the law; and the resources that counsel can devote to the case. The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Rule 23(g)(1)(B). Here, Buhk is represented by the following attorneys from three law firms: Dennis Grzezinski, Charles Watkins, Garrett Blanchfield, and Roberta Yard. Each attorney has submitted a declaration outlining his or her experience in litigating class actions, including cases arising under the Takings Clause. Dkts. 51-53; Dkt. 49-9. Collectively, counsel have more than adequate resources and extensive litigation experience with class actions and takings issues. Defendant does not challenge

counsel's adequacy. So the court is persuaded that plaintiffs' counsel meet the requirements in Rule 23(g)(1).

## H. Rule 23(b)(2) requirements

Class certification is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Defendant argues once again that plaintiffs' claims must be resolved on a claim-by-claim basis, not collectively, making certification under Rule 23(b)(2) inappropriate. Dkt. 56, at 28-32. For reasons already discussed, this argument is not persuasive.

Contrary to defendant's argument, the injunctive and declaratory relief sought by plaintiffs relates to the statutory method that defendant is using to calculate the interest owed on reclaimed property that was non-interest-bearing at the time it was transferred to the state's custody. Plaintiffs' claims are not based on the individual circumstances of a particular property owner who seeks to reclaim his property. *See Chicago Teachers Union*, 797 F.3d at 441-42 (certification appropriate under 23(b)(2) when the plaintiffs "seek the same declaratory and injunctive relief for everyone"). And defendant's concern that some class members will be harmed by a putative injunction or declaration ordering defendant to "pay what the state has earned" in interest on that owner's property could easily be assuaged by adding the words "at least." Given the standardized conduct at issue in this case, the court finds certification of a class under Rule 23(b)(2) appropriate.

**I.  Class notice**

"Rule 23(b)(2) does not require notice, because no one can opt out of a (b)(2) class." *Lewis*, 702 F.3d at 962. A court has discretion to issue notice, Fed. R. Civ. P. 23(c)(2), but neither side asks for notice in this case, and the court sees no need for it.

**J.  Conclusion**

Plaintiffs may have a difficult time in showing that the UPA's interest payment provisions for unclaimed property in the amount of at least $100 deprives them of just compensation under the Fifth Amendment. But the court is persuaded that plaintiffs' claims can be resolved collectively rather than individually. So the court will grant the motion for class certification.

ORDER

IT IS ORDERED that:

1.  Plaintiff Carijean Buhk's motion for class certification under Federal Rule of Civil Procedure 23(b)(2), Dkt. 48, is GRANTED.

2.  The court certifies the following class:

    All persons or entities (including their heirs, assignees, legal representatives, guardians, administrators, and successors in interest) who have property in the form of money that is $100 or more in the State of Wisconsin's custody under the Wisconsin Revised Uniform Unclaimed Property Act that was non-interest bearing at the time it was delivered to the state, and whose claim is allowed under Wis. Stat.

§ 177.0904(2). The class does not include states and governmental units or subdivisions of states.

3.  Named plaintiff Carijean Buhk is appointed class representative.

4.  Dennis Grzezinski, Charles Watkins, Garrett Blanchfield, and Roberta Yard are appointed class counsel.

Entered September 18, 2023.

BY THE COURT:

 /s/
_____
JAMES D. PETERSON
District Judge